UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No.03-383 (DWF/SRN)

---

United States of America,
Plaintiff,

v.

Gustry Lashan Sailee,
Defendant.

---

POSITION OF THE DEFENDANT WITH RESPECT TO SENTENCING FACTORS

The Defendant, by and through his attorney, submits the following position of the defendant with respect to sentencing factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory language set forth in 18 U. S. C. § 3553(a) and pursuant to the Local Rule.

It is our position that Mr. Sailee has suffered from schizophrenia since his early teenage years. There are two types of schizophrenia: paranoid schizophrenia and disorganized schizophrenia. The diagnosis here is undifferentiated type. According to the DSM IV, Schizophrenia Undifferentiated Type is a type of schizophrenia in which symptoms that meet Criterion A: two (or more) of the following, each present for a significant portion of time during a 1-month period:

1. delusions;

2. hallucinations;

3. disorganized speech;

4. grossly disorganized or catatonic behavior;

5. negative symptoms; are present, but the criteria are not met for the Paranoid, Disorganized, or Catatonic Type.

In the disorganized type, disorganized behavior is more prominent. The individual may have delusions and hallucinations, but it is harder to find any coherence in the symptoms. These individuals tend to express more inappropriate affect and are associated with an early, slow, insidious onset and worst outcome. For a significant portion of the time since the onset of the disturbance, one or more major areas of functioning such as work, interpersonal relations, or self-care are markedly below the level achieved prior to the onset (or when the onset is in childhood or adolescence, failure to achieve expected level of interpersonal, academic, or occupational achievement).

In paragraphs 93 through 97 of the Presentence Report lays out Mr. Sailee's recent and present mental health. Paragraph 66 reflects a conviction for Fourth Degree Assault and Obstruction of Legal Process from March 9, 2002, where the underlying behavior of the arrest and subsequent trial clearly shows his mental illness was present near the time of the events in this case. When the undersigned attorney first met Mr. Sailee for two hours on December 30, 2003 at the Sherburne County Jail, he was fixated on that prior state court trial as well as obscure and minor procedural details of the current case.

Mr. Sailee's juvenile record and early adult convictions also support this diagnosis of early onset of schizophrenia.

In an Update from the National Institute of Mental Health in 2003, the symptoms of Childhood-Onset Schizophrenia as laid out:

*Symptoms and Diagnosis*

> While schizophrenia sometimes begins as an acute psychotic episode in young adults, it emerges gradually in children, often preceded by developmental disturbances, such as lags in motor and speech/language development. Such problems tend to be associated with more pronounced brain abnormalities. The diagnostic criteria are the same as for adults, except that symptoms appear prior to age 12, instead of in the late teens or early 20s. Children with schizophrenia often see or hear things that do not really exist, and harbor paranoid and bizarre beliefs. For example, they may think people are plotting against them or can read their minds. Other symptoms of the disorder include problems paying attention, impaired memory and reasoning, speech impairments, inappropriate or flattened expression of emotion, poor social skills, and depressed mood. Such children may laugh at a sad event, make poor eye contact, and show little body language or facial expression.
>
> Misdiagnosis of schizophrenia in children is all too common. It is distinguished from autism by the persistence of hallucinations and delusions for at least 6 months, and a later age of onset—7 years or older. Autism is usually diagnosed by age 3. Schizophrenia is also distinguished from a type of brief psychosis sometimes seen in affective, personality, and dissociative disorders in children. Adolescents with bipolar disorder sometimes have acute onset of manic episodes that may be mistaken for schizophrenia. Children who have been victims of abuse may sometimes claim to hear voices of—or see visions of—the abuser. Symptoms of schizophrenia characteristically pervade the child's life, and are not limited to just certain situations, such as at school. If children show any interest in friendships, even if they fail at maintaining them, it is unlikely that they have schizophrenia.

In paragraphs 93 through 97, Mr. Sailee's schizophrenia has affected his behavior and judgment for a many years and was undiagnosed likely because of the rarity of childhood onset and that it was easier to label him an anti-social personality as was done in the initial evaluation in this case at Chicago.

As a result of this long term mental illness, Mr. Sailee's criminal history is exaggerated and not reflective of his healthy personality.

It is clear that he was suffering from a mental illness at the time of these offenses and that is a mitigating factor.

It is clear that he was not mentally capable of being the leader or manager of this criminal

activity, but rather acted as a go-between.

In paragraph one hundred twenty five, Mr. Sailee, in addition to the possible departure due to a significantly reduced mental capacity, is eligible for a downward departure from the sentencing guidelines for the following factors:

1. The advisory guideline "greater than necessary" or too draconian and the purpose of sentencing are satisfied by a sentence below the guidelines;
2. Departure to substitute community confinement for prison to allow for treatment of his mental illness;
3. Unlikely to be a recidivist if treated for his mental illness;
4. Delay in sentencing resulting from untimely diagnosis and treatment;
5. Disparity in sentencing with other co-defendants who pled guilty;
6. The defendant's criminal history over represents seriousness of past criminal conduct; and lastly
7. The defendant's present extraordinary mental and emotional condition.

In paragraph ten, sixteen, nineteen, twenty eight, twenty nine, and thirty eight, we object to the characterization of Mr. Sailee as the organizer or leader of the criminal activity. We recognize that the probation officer was provided with information from the government and other codefendants who suggest that from their perspective Mr. Sailee was the organizer and manger. More importantly, Roger Dotstry obtained a significant plea agreement that is jeopardized if his actual role is proven. Mr. Sailee as a result of his mental illness until very recently was unable to communicate with his lawyer. As a result, accurate information was provided to the probation officer late after the stone was written.

If this court takes into consideration Mr. Sailee's diminished capacity and the scope of the scheme, it is apparent that Roger Dotstry was the organizer and manager and that Mr. Sailee was a go-between. Roger Dotstry asked Mr. Sailee if Linda Langren had access to private financial data where she worked and if she could run credit reports and order checks. When Gus Sailee reported back to him, that she did and could, Roger Dotstry made identification and social

security cards on his home computer which Roger Dotstry used to open up the postal drops. Roger Dotstry would pick up the checks and through Gus Sailee distribute them to others, including Eric McMillan. Mr. Sailee believes that the profits from this activity were split equally between Roger Dotstry, Eric McMillan and himself.

This scheme was developed and run by Roger Dotstry who insulated himself through Gus Sailee. Nothing in Mr. Sailee's past suggest that he has the capacity to organize or lead these events. If he had access to identification documents as used here, there would not have had so many charges and convictions for driving without a license.

Mr. Sailee's diminished capacity under §5K2.13, suggests that a sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity and should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

The Defendant's Criminal History over represents the seriousness of past criminal conduct. In paragraphs fifty four, fifty five, fifty seven, fifty nine, sixty three, sixty four, sixty five, sixty seven, and sixty eight eighteen of the criminal history points determining the criminal history are misdemeanors driving without a license offenses. Although removing these from the calculation will not change the criminal history category, they unfairly enhance his criminal history, and we object to their inclusion in the Presentence Report.

In paragraphs seventy three through eighty, the allegations listed have not been proven or been dismissed. Mr. Sailee objects to the inconclusion of dismissed and unproven charges because prior arrest records shall not be considered under §4A1.3. (See Policy Statement to that U.S. v. Hammond, 240 F. Supp.2d 872 (E.D. Wisc. 2003) (in granting departure from category III to II, because criminal history is overstated, court may consider (1) the age of the

priors, (2) the defendant's age at time of the priors, (3) whether drug and alcohol use were involved in the priors, ((4) the circumstances of the prior offenses; (5) the length of the prior sentences; (6) the circumstances of the defendant's life at the time of the priors, and (7) the proximity of the priors. U.S. v. DeJesus, 75 F.Supp. 2d 141, 144 (S.D.N.Y. 1999) (criminal category V over represented D's criminal history where several priors were probation terms and, of three jail sentences, only one longer that 60 days, and two of eight convictions were for loitering and trespassing and did not count for guideline purposes, and remaining six convictions resulted in no more than 2 years jail, and most conduct committed before D was 21 – and now that D married and father more responsible – "a lengthy sentence required by higher criminal history category will lessen not increase the likelihood of rehabilitation."); U.S. v. Leviner, 31 F.Supp.2d 23 (D. Mass. 1998) (category V, based on traffic violations that accounted for 7 criminal history points, overrepresented relatively minor and non-violent nature of defendant's record and replicated disparities in state sentencing scheme, particularly racial disparities.

Mr. Sailee is being involuntarily medicated. He is being overly medicated. Mr. Sailee has experienced significant side effects from the medication. He has asked the medical authorities at Anoka to change or reduce the amount of the medication. They have refused unless there is a Sell hearing. As a result of this institutional transience, a probation setting or confinement to a halfway house is a more appropriate for Mr. Sailee.

Mr. Sailee will be shortly returned to the community in any event because of his lengthy pretrial incarceration, an incarceration where he was not promptly diagnoses and suffered from a debilitating mental illness that resulted in substandard, even sub human, conditions of confinement. As a result, Mr. Sailee is asking for a departure to substitute community confinement for prison. USSG 5C1.1 authorizes such a departure that permits substitution of

more community confinement than otherwise authorized for an equivalent number of months of imprisonment for treatment.

Further, an untreated Mr. Sailee has a diminished capacity to understand and process information, to communicate, to learn from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others... often act on impulse rather than pursuant to a premeditated plan, and... are followers rather than leaders.

These deficiencies may not warrant an exemption from criminal sanctions, but they do diminish their personal culpability. See Atkins v. Virginia, 536 U.S. 304, 318 (2002) Penry v. Lynaugh, 492 U.S. 302, 322 (1989) (O'Connor, J., concurring) ("mental retardation may render a defendant "less morally culpable than defendant who have no such excuse.

Mr. Sailee's extraordinary mental and emotional condition. justifies a departure; in U.S. v. Garza-Juarez, 992 F.2d 896, 913 (9th Cir. 1993) the court departed downward under §5H1.3 where the defendant suffered from panic disorder and agoraphobia.

On page F.2 Identifying Date: Alias, Mr. Sailee objects to the inclusion of the names Gblay Seyon Sailee, Blay Sailee, Fbay Sailee, Efblay Sailee, Golay Sayon Sailee because there are the names of his brother or misspellings of his brother's name. Mr. Sailee objects to the name Mustry Sailee because it is a misspelling of his name. Mr. Sailee objects to the name of Charles Davis because he has no knowledge of that name. Patrick Bollom and Richard Chapman were victims in the present case.

For the foregoing reasons, Gustry Lashan Sailee respectfully submits that on Count One of the indictment, a sentence of twenty seven months, or confinement to a halfway house with supervised release is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U. S. C. § 3553(a).

Dated: August 17, 2005

Respectfully submitted,

s/ Rick E. Mattox
Rick E. Mattox, Attorney I.D. No. 0068731
Attorney for Defendant
Franklin Trail Office Building, Suite 250
16670 Franklin Trail
Prior Lake, MN 55372
952/469-2299